UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FOLAYAN DARA ZHENG,                          )
                                             )
                    *Plaintiff,*             )
                                             )
            v.                               )        No. 1:21-cv-02310-JMS-MKK
                                             )
LLOYD AUSTIN, III, ET AL.,                   )
                                             )
                    *Defendants*.            )

## <u>ORDER</u>

*Pro se* Plaintiff Folayan Dara Zheng was employed by the Department of Defense, Defense

Finance and Accounting Services ("DFAS") as an IT Specialist and initiated this litigation on

August 20, 2021 asserting various employment-related claims against numerous Defendants.

[Filing No. 1.]  On October 4, 2022 – after the Court had ruled on multiple motions primarily filed

by Ms. Zheng – Ms. Zheng filed a forty-page Fourth Amended Complaint, which is now the

operative complaint in this case.  [Filing No. 104.]  In the Fourth Amended Complaint, she names

the following Defendants: (1) Lloyd Austin, III (Secretary of the United States Department of

Defense); (2) Charlotte Burrows (Chair of the Equal Employment Opportunity Commission

("EEOC")); (3) Andrea Lucas (Commissioner of the EEOC); and (4) various DFAS employees,

including Eros Kopliku, Brian Trinkle, Terri Griffo, Constance Asher, Vivian Tookes, William

Kostic, Robert Arnold, Joanne Moran, Aaron Gillison, Carol Lawson, Teresa McKay, Sarah

Hentzell, Megan Hart, Anita Martin, Nancy Keaton, Heather Crews, Theodore Pennington, Alan

Trinkle, Katie Vigil, Richard Glick, Tracey Meyer (Columbus), Victor Blake, John Cochran, Gary

Turner, Teresa Blue, Roger Anderson, Ronald Murlin, Kenyon Porter, and Tracey Meyer[1]

(collectively, "the Individual Defendants").[2]

Various Defendants have now filed Motions to Dismiss, [Filing No. 111; Filing No. 113;

Filing No. 136], and Ms. Zheng, consistent with her zealous pattern of filing thus far in this

litigation, has filed twelve "Notices" in the last few months, [Filing No. 106; Filing No. 108; Filing

No. 116; Filing No. 122; Filing No. 125; Filing No. 130; Filing No. 138; Filing No. 144; Filing

No. 145; Filing No. 146; Filing No. 161; Filing No. 162], five motions seeking a Clerk's entry of

default or default judgment against certain Defendants, [Filing No. 115; Filing No. 119; Filing No.

120; Filing No. 121; Filing No. 132], a Motion for Injunctive Relief, [Filing No. 126], and a Motion

to Withdraw one of her Notices, [Filing No. 147].  This Order discusses all of those filings.

## I.
## Ms. Zheng's Notices [Filing Nos. 106, 108, 116, 122, 125, 130, 138, 144, 145, 146, 161, and 162]

As stated above, Ms. Zheng has filed twelve documents that she titles "Notices."  They

cover a variety of topics, including advising the Court regarding: (1) her intention to submit new

summonses for certain Defendants; (2) her belief that she has properly served certain Defendants;

(3) documents she intends to file; (4) a transcript of a Court proceeding she ordered from the Court

Reporter; (5) her belief that Defendants have not complied with discovery obligations; (6) her

belief that Defendants have not satisfied their obligations regarding responding to her settlement

---

[1] Ms. Zheng lists both "Tracey Meyer (Columbus)" and "Tracey Meyer" as Defendants.  [Filing No. 104 at 8.]  It is not clear whether this is a typographical error or whether these are two different individuals, but the Court assumes the latter out of an abundance of caution.

[2] Ms. Zheng named the "Defense Finance and Accounting Service Office of Equal Employment Opportunity Programs" in her original Complaint, [see Filing No. 1 at 8], but does not name that entity in her Fourth Amended Complaint, [see Filing No. 104].  Accordingly, the Court **DIRECTS** the Clerk to **TERMINATE** the "Defense Finance and Accounting Service Office of Equal Employment Opportunity Programs" as a party in this case.

demand; (7) her belief that a settlement conference would be beneficial; and (8) her correction of an earlier-filed Notice.  [Filing No. 106; Filing No. 108; Filing No. 116; Filing No. 122; Filing No. 125; Filing No. 130; Filing No. 138; Filing No. 144; Filing No. 145; Filing No. 146; Filing No. 161; Filing No. 162.] With the exception of Ms. Zheng's Notice Regarding Settlement Conference, which was filed pursuant to the Magistrate Judge's Order requiring her to file a notice stating whether she believed a settlement conference would be beneficial, [*see* Filing No. 128 at 4], Ms. Zheng is advised that her "Notices" have no effect.

In order to trigger action by the Court, Ms. Zheng must file a motion, not a notice.  Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").  Her numerous Notices serve to clutter an already cumbersome docket that reflects 162 filings in 16 months, where essentially nothing substantive has yet occurred in this case.  Unless otherwise ordered by the Court to file a notice, any further notices filed by Ms. Zheng will be stricken from the docket.[3]

## II.
## MS. ZHENG'S DEFAULT-RELATED MOTIONS [FILING NOS. 115, 119, 120, 121, AND 132]

At the outset, the Court notes that Defendants do not contest that all Defendants were served as of October 6, 2022.  [*See* Filing No. 140.]  The Court now considers Ms. Zheng's default-related motions:

- Motion for Entry of Default, [Filing No. 115]:  Ms. Zheng seeks Clerk's entry of default against the Individual Defendants for failure to answer or otherwise defend after they were served with earlier versions of the Complaint and the operative Fourth Amended Complaint.  Once the Individual Defendants were served with the Fourth Amended Complaint on October 6, 2022, their time to answer or otherwise plead started anew.  Ms. Zheng filed her Motion for Entry of Default before the Individual Defendants' deadline for answering or

---

[3] Ms. Zheng filed a "Motion Withdraw Pleading/Document (Dkt. 144)," in which she advises that she filed a corrected version of her Notice at Filing No. 144.  [Filing No. 147.]  Although her "Notices" have no effect in any event, the Court **GRANTS** her "Motion Withdraw Pleading/Document (Dkt. 144)," [Filing No. 147], and **DIRECTS** the Clerk to show Filing No. 144 as withdrawn.

otherwise pleading to the Fourth Amended Complaint had expired. *See* Fed. R. Civ. P. 12(a). Accordingly, Ms. Zheng's Motion for Entry of Default, [Filing No. 115], is **DENIED**;

- Motion for Default Judgment, [Filing No. 119]: Ms. Zheng seeks a default judgment against "[t]he Defendant," but does not specify which Defendant or Defendants to which her motion is directed. In any event, default is a "two-step process" that is "clearly outlined" in Rule 55 of the Federal Rules of Civil Procedure, with subpart (a) outlining the entry of default and subpart (b) outlining the entry of default judgment. *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016); *see also* 10A Charles Alan Wright, Arthur R. Miller, *et al.*, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2682 (2018). Ms. Zheng has not obtained a Clerk's entry of default against any of the Defendants, so her Motion for Default Judgment, [Filing No. 119], is **DENIED** because she has not satisfied the first step of Rule 55 by first obtaining Clerk's entries of default.[4]

- Request for Certificate of Default, [Filing No. 120]: Ms. Zheng seeks a Clerk's entry of default against Secretary Austin for failing to answer or otherwise plead within the deadline for doing so. Secretary Austin was served with the Fourth Amended Complaint on October 6, 2022, [Filing No. 140], and filed a Motion to Dismiss on October 18, 2022, [Filing No. 111], well within the deadline for responding to the Fourth Amended Complaint. Ms. Zheng's Request for Certificate of Default, [Filing No. 120], is **DENIED**.

- Motion for Default Judgment on Sum Certain, [Filing No. 121]: Ms. Zheng seeks a default judgment against Secretary Austin. Because she has not first obtained a Clerk's entry of default against Secretary Austin, and because Secretary Austin timely responded to the Fourth Amended Complaint, her Motion for Default Judgment on Sum Certain, [Filing No. 121], is **DENIED**.

- Motion for Default Judgment on Sum Certain, [Filing No. 132]: Ms. Zheng seeks default judgments against the Individual Defendants. As discussed above, she cannot obtain default judgment without first obtaining a Clerk's entry of default against the Individual Defendants, which she has not done. Her Motion for Default Judgment on Sum Certain, [Filing No. 132], is **DENIED**.

---

[4] Ms. Zheng has filed motions for default judgment before obtaining Clerk's entries of default earlier in this litigation, and the Court previously explained the proper process for obtaining default judgment. [*See, e.g.*, Filing No. 56 at 2.] The Court cautions Ms. Zheng that further filings which are contrary to processes the Court has already explained will be considered frivolous and will be summarily denied.

Having denied all of Ms. Zheng's default-related motions, the Court advises Ms. Zheng that it will not consider any further motions seeking either Clerk's entry of default or default judgment against any of the Defendants related to the operative Fourth Amended Complaint. Should Ms. Zheng file any such motions, they will be summarily denied and she may face monetary sanctions.

### III.
### MS. ZHENG'S MOTION FOR INJUNCTIVE RELIEF [FILING NO. 126]

Ms. Zheng has filed a Motion for Injunctive Relief, [Filing No. 126], in which she argues that Mr. Austin, Ms. Burrows, and Ms. Lucas develop and implement policies regarding sexual harassment and racial discrimination, conduct investigations into complaints regarding sexual and racial harassment, and implement disciplinary measures for employees who fail to comply with policies, [Filing No. 131 at 1]. She asserts that "[t]o not provide preliminary injunctive relief in this case for the financial accounting services and defendants charged with upholding Title VII rules and regulations supported by the United States Constitution would be continuously detrimental and harmful to the privacy, security and well-being of both the plaintiff and to the United States of America." [Filing No. 131 at 1.] Ms. Zheng requests that the Court "[p]lace all defendants…on immediate administrative leave pending the outcome of the litigation"; "[s]uspend funding and future placement of Leaders in Motion[5] candidates pending a review of the program's compliance with EEOC and Title VII anti-discriminatory regulations from the past six years"; "collaboratively and independently develop and implement up to date anti-harassment policies regarding sexual harassment and racial discrimination at all Department of Defense facilities"; "[c]onduct an impartial investigation process of all complaints of sexual and racial

---

[5] Ms. Zheng characterizes the "Leaders in Motion Program" in her Fourth Amended Complaint as a "mandatory training program." [Filing No. 104 at 27.]

harassment, abuse of authority, [and] whistleblower activities for the past six years"; "[i]mplement disciplinary measures for employees that fail/have failed to comply with the investigation processes"; "mandatory annual training for all supervisors and/or termination of individual defendants involved in/responsible for violations of Title VII in this or other cases in which violations have been raised and deemed justifiable on reviews"; and "[t]hat the EEOC, the Court and the United States Department of Justice carefully consider the national security implications and risks of ill use of the Leaders in Motion program." [Filing No. 131 at 2.]

In their response, Defendants argue that Ms. Zheng lacks standing to seek injunctive relief because she is no longer a DFAS employee. [Filing No. 148 at 1-2.] They assert that, in any event, Ms. Zheng has not met her burden of establishing that she is likely to succeed on the merits because she has not set forth any evidence supporting her claims, that she has not established that she is likely to suffer irreparable harm because she has not worked at DFAS for years, and that "the equities and public interest weigh against the Court ordering extreme forms of injunctive relief, such as placing dozens of employees on administrative leave, terminating a federal training program, or instituting Court-ordered policies at all Department of Defense facilities worldwide based on the unsubstantiated allegations of a single former employee." [Filing No. 148 at 3-4.]

Ms. Zheng reiterates her allegations in her reply, but does not respond to Defendants' specific arguments. [Filing No. 151.]

Ms. Zheng did not respond to the arguments Defendants set forth in their response brief, so has waived any opposition to those arguments. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver."); *see also McMasters v. U.S.*, 260 F.3d 814, 818 (7th Cir. 2001) (a party's *pro se* status does not excuse a failure to respond). In any event, the Court can readily resolve Ms. Zheng's motion.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015).  To meet the threshold showing of a preliminary injunction, Ms. Zheng must show that "(1) without this relief, [she] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [she] has some likelihood of prevailing on the merits of [her] claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quotations and citations omitted).  Ms. Zheng no longer works for DFAS, so she will not suffer irreparable harm in the absence of an injunction – she is no longer subject to the practices about which she complains, nor will she be in the future. As a former employee, she cannot seek the type of injunctive relief she does here.  *See Tennes v. Com. of Mass., Dept. of Revenue*, 944 F.2d 372, 382 (7th Cir. 1991).

Accordingly, the Court **DENIES** Ms. Zheng's Motion for Injunctive Relief.  [Filing No. 126.]

## IV.
### DEFENDANTS' MOTIONS TO DISMISS [FILING NOS. 111, 113, AND 136]

Three Motions to Dismiss are currently pending – a Motion to Dismiss Breach of Contract Claim filed by Secretary Austin, [Filing No. 111], a Motion to Dismiss filed by Ms. Burrows and Ms. Lucas, [Filing No. 113], and a Motion to Dismiss filed by the Individual Defendants, [Filing No. 136].  The Court sets out the applicable standards of review and Ms. Zheng's allegations before discussing each motion in turn.

### A.  Standards of Review

Defendants all bring their motions, at least in part, pursuant to Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89,

93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).   In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.   *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).   A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.   *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).   Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).   This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.*

Secretary Austin, Ms. Burrows, and Ms. Lucas also rely upon Fed. R. Civ. P. 12(b)(1) in their Motions to Dismiss.   "Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction."   *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).   When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor.   *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) ("Facial challenges [to subject matter jurisdiction] require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.") (emphasis omitted).

## B. Background

Ms. Zheng's Fourth Amended Complaint is lengthy and is not a model of clarity.[6] Nevertheless, the Court has done its best to discern Ms. Zheng's claims and supporting allegations. The following are the factual allegations set forth in the Fourth Amended Complaint that the Court has identified, which the Court accepts as true at this time.

Ms. Zheng is African-American and was forty six years old when she was hired by DFAS as an IT Specialist assigned to the COBOL Software Team in June 2016. [Filing No. 104 at 11-12.] Ms. Zheng always received favorable employment evaluations, praise from her colleagues and supervisors, and citations and awards for her performance. [Filing No. 104 at 13.] She alleges, however, that she "was consistently denied written thanks, accolades or commendations in an environment in which [she] is expected [to] provide such proofs in order to substantiate her valuable contributions to Agency projects" and to obtain promotions. [Filing No. 104 at 13; *see also* Filing No. 104 at 23.] She also alleges that she was denied "essential software developer skills necessary to do her job," and was "pressured to disregard sexual harassment, with pressures to not get team members in trouble; to not mention any other incidents of racial or sexual harassment; [and] to not complain nor seek investigation about other team members for [anything] negatively impacting [her] career." [Filing No. 104 at 18-19.]

In June 2016, a co-worker told Ms. Zheng, "You are not who we expected," nodding to Ms. Zheng's name badge. [Filing No. 104 at 21.] Ms. Zheng then "was treated to ridicule, racial, sexual harassment and discriminations by Department of Defense management and immediately

---

[6] With Ms. Zheng's agreement, the Court previously recruited counsel to assist Ms. Zheng with the drafting of her Fourth Amended Complaint. [Filing No. 98.] Ms. Zheng then changed her mind, determined she would rather draft the Fourth Amended Complaint herself, and counsel was permitted to withdraw. [Filing No. 102.]

began to experience adverse employment actions of: lack of managerial support on documentation…; refusal and omission of training requirements undertraining; [breach] of contract; [and] lack of instruction of reporting skills sets throughout the organization for promotional or merit skill/experience building opportunities." [Filing No. 104 at 21-22.] Also in June 2016, the same co-worker told Ms. Zheng that he would email a supervisor, Carol Lawson, regarding a requirement that Ms. Zheng name a mentor on an orientation form. [Filing No. 104 at 22.] Ms. Lawson never responded and in March 2017, Ms. Lawson "attempt[ed] to use door security entrapment for [Ms. Zheng] for non-hire security infraction." [Filing No. 104 at 22.]

Also in June 2016, Ms. Tookes stated to Ms. Zheng in a meeting, "You're younger than me," engaged in hostile conversations regarding "running employees off," and "menacingly [ground] a fist into [Ms. Zheng's] desk." [Filing No. 104 at 28.] Ms. Tookes had her cubicle decorated with "impaled animals, [and] a diorama of beheaded and bloody 'peeps' placed on a cubicle wall and on employee computer monitors." [Filing No. 104 at 28.] Ms. Tookes also allowed a Caucasian employee to work remotely without allowing Ms. Zheng to do so, Ms. Tookes and the Caucasian employee insisted that Ms. Zheng be called a "Nazi," and they "invite[d] [Ms. Zheng] in on a sexual joke regarding LGBT persons." [Filing No. 104 at 28.] When Ms. Zheng would not join in, the Caucasian employee asked Ms. Zheng for pictures of her children and Ms. Tookes loudly commented about her "Kentucky relatives still upholding the racist 'One Drop Rule,' regarding children of any African American parentage." [Filing No. 104 at 28.]

In July 2016, after meeting with Ms. Zheng and inquiring regarding her nation of origin, Mr. Kopliku refused to train Ms. Zheng and forced her "with no internal knowledge to work on a high security, high profile exposure project." [Filing No. 104 at 22.] The same month, Mr. Kostic assigned Ms. Zheng to "very hefty Risk Management assignments" and touched and groped her.

[Filing No. 104 at 22-23.]  Veteran, Caucasian employees received easy assignments and "[o]ther, similarly situated direct competitor[s] of [Ms. Zheng] received assignment assistance," but Mr. Kostic "refused to write [a] customary merit review of [Ms. Zheng's] individual contribution and instead, expressed racial and sexual sentiments towards [her]."  [Filing No. 104 at 22-23.]

Ms. Meyers "would also share DFAS practices oppositional to the [Leaders in Motion] Program funded intent to 'recruit', train, and 'retain' I&T and accounting professionals…, which was disparate to [Ms. Zheng] and African Americans in I&T/Finance."  [Filing No. 104 at 23.] Further, Mr. Kostic refused to provide Ms. Zheng with "written accolades over achievements and contributions to major and minor software, [or] critical organizational and team efforts," that would give Ms. Zheng "clear evidence of experience qualifying [her] for hire into several open(ing) positions."  [Filing No. 104 at 23.]

Mr. Glick and Ms. Vigil subjected Ms. Zheng to requirements which "undermin[ed] [Ms. Zheng's] suitability assessment," and assigned her to work with Mr. Trinkle's nephew, Ms. Zheng was "ostracized and treated [hostilely] for engaging in protected activities," and Ms. Vigil and Mr. Glick excused Mr. Trinkle's nephew's "cultural/racially discriminating/disparaging activities…using the excuse that [Mr.] Glick (Caucasian) had 'done or said worse' than [Mr. Trinkle's nephew] had done and thus should be excused or not disciplined."  [Filing No. 104 at 23.]

In September 2016, Ms. Zheng attended a staff meeting where Mr. Trinkle went over agency memos regarding sexual harassment and reporting procedures.  [Filing No. 104 at 24.]  Mr. Trinkle demanded that Ms. Zheng meet again, alone, to sign a different version of a performance assessment, falsely stating that her document did not contain a certain item that other teams members' documents did, which "[gave] management more constructive discharge power over

[her]."  [Filing No. 104 at 24.]  Also in September 2016, Ms. Zheng submitted a self-evaluation as part of her "quarterly/semi-annual/yearly evaluation," and Mr. Trinkle "reversed [Ms. Zheng's] words/phrases to make up false negatives."  [Filing No. 104 at 30.]  After Ms. Zheng complained in an email, the negatives were removed from her evaluation.  [Filing No. 104 at 30.]  She then was not allowed to take sick leave without managerial approval.  [Filing No. 104 at 30.]

In October 2016, Ms. Zheng contacted the EEOC to "report harassment, retaliation for engaging in protected activities and impending constructive discharge."  [Filing No. 104 at 12.]  Also in October 2016, Ms. Zheng met with Mr. Trinkle and "protected activities/complaints sent via mail were inappropriately brought up."  [Filing No. 104 at 24.]  Mr. Trinkle coerced and threatened Ms. Zheng "to believe that he had the authority [to] decide the gravity levels of harassment complaints," told her the "cases were 'closed,'" and told Ms. Zheng that she was "not viewed as a team player" by management but instead was viewed as a "tattletale."  [Filing No. 104 at 24.]  On October 11, 2016, Mr. Arnold went near Ms. Zheng and "ma[de] a very marked pulling a trigger to his temple, with (blow back impact of a released trigger) gesture approximately two days after [Mr.] Trinkle [made the same gesture]."  [Filing No. 104 at 27; Filing No. 104 at 29.]

In November 2016, after Ms. Zheng contacted Ms. McKay "regarding the complaints reporting the memo bearing her name, the memos [were] changed and redistributed…still stating misleading reporting procedures."  [Filing No. 104 at 23-24.]

In March to October of 2017, Ms. Zheng emailed the EEOC a document titled "Potential Violations," which "entailed many unprocessed plaintiff claims never given merit of due process, including training incidents which included that management ([Mr.] Trinkle) uses managerial coverups to obstruct the Plaintiff on approximately October 4, 2016 on: a) [Ms.] Tookes' denial of the Plaintiff's opportunity to learn Brockelman duties leading to qualifications an opening vacancy

(filled by Anita Martin, a Caucasian contractor); that [Mr.] Kopliku, [Mr.] Trinkle, [Ms.] Tookes, [Ms.] Moran and [Ms.] Keaton failed to ensure that the plaintiff was signed up for job essential training sessions." [Filing No. 104 at 21 (internal quotations omitted).]

In April of 2017, "EEOC…individuals [Ms.] Moran [and Ms.] Hentzell did willfully engage in [rogue] behaviors meant to obstruct and frustrate [Ms. Zheng] prior to an investigation testimony," and Ms. Zheng was "accused of: impropriety/not following unstated managerial protocols; [and] insubordination, resulting in a disciplinary briefing." [Filing No. 104 at 25.]

In May or June of 2017, Mr. Kopliku and Mr. Trinkle approached Ms. Zheng in the break area and Mr. Kopliku "alluded to [Ms. Zheng's] children and geospatial data about their summer activities though [Ms. Zheng] never told [them] that her children were engaging in those activities." [Filing No. 104 at 27.] This incident occurred after Ms. Zheng had initiated "what would be a second complaint cause number against the defendants." [Filing No. 104 at 27.]

Following the Christmas holiday in 2017, and after Mr. Trinkle and management would have received notice of Ms. Zheng's EEOC complaints, a fellow Christian employee, Stephen Guernsey, stopped speaking to Ms. Zheng, and another supervisor "unexpectedly stopped [Ms. Zheng] in the hallway and told [her] personal accounts of warning on to not being able to assist others in case they brought false harassment charges." [Filing No. 104 at 28.]

Sometime in 2017, "[Mr.] Trinkle's last name and first and middle name initials appear[ed] in [Ms. Zheng's] Facebook along with multiple lewd photos and fake account recommendations." [Filing No. 104 at 29.] Also in 2017, Ms. Zheng was promoted two grade levels and was recognized as a valued team member and as having a "great attitude." [Filing No. 104 at 12.]

From October 2017 to April 2018, Ms. Zheng's then-supervisor, Mr. Porter, "continued the same, reprisal and retaliation hostile tactics experienced under [Mr.] Kopliku and [Mr.] Trinkle."

[Filing No. 104 at 28-29.]   In November or December 2017, Mr. Porter intentionally delayed approval of an opportunity for Ms. Zheng to train under Ms. McKay until after the documentation deadline had passed.   [Filing No. 104 at 29.]   In April 2018, Mr. Porter "walk[ed] like a gorilla through her rotational work area…minutes prior to [Ms. Zheng] approaching her desk to find an orange Kong tennis ball/dog toy."   [Filing No. 104 at 29.]   In March or April 2018, Mr. Porter never called for Ms. Zheng's annual appraisal personal assessment, and "limited [her] summary of contributions to the time [he] had taken over as supervisor, not for the entire year."   [Filing No. 104 at 28-29.]

In February or March of 2018, Mr. Pennington was Ms. Zheng's supervisor and gave her an assignment to "'validate' the ability to sign into a database by viewing a video with slave brutality photos in view."   [Filing No. 104 at 24.]   Mr. Pennington also "refused to approve mandatory projects when [Ms. Zheng] was the project beneficiary; assigned [her] system administrator empty training modules with written intent to promote [her] while other (Caucasian) system administrators were utilizing different modules; and did not reply when the plaintiff successfully passed all examinations for administrator."   [Filing No. 104 at 24.]

Mr. Murlin and Ms. Blue "refuse[d] to timely/approve mandatory projects as customary when [Ms. Zheng] was the project beneficiary; and assign[ed her] to disproportionate amounts and types of duties in comparison to similarly suited or more veteran, Caucasian employees."   [Filing No. 104 at 30.]   Ms. Zheng alleges that Mr. Gillison removed her from a high profile programming project, which negatively affected her "merit towards upcoming department job openings," and that Mr. Gillison "visit[ed] aisles [she was] stationed on twice to visit Caucasian women staffers, and violently refuse[d] to speak to [her]."   [Filing No. 104 at 30.]

Ms. Zheng sues Ms. Lucas and Ms. Burrows in their official capacities as employees of the EEOC. [Filing No. 104 at 14.] She alleges that the EEOC denied her "the opportunity to [request] and review discovery documents prior to the formulation of deposition questions, ensuring a weakened opportunity for [her] to prove constructive discharge." [Filing No. 104 at 26.] She also claims that the EEOC interfered with her ability to "[name] a representative." [Filing No. 104 at 26.]

Ms. Zheng alleges that Secretary Austin breached contracts with her as follows:

a) in the hiring offer with agreed one year probationary period with an extension to a two year period; b) in the establishment of the plaintiff into the defendant and AFGE Union Agreement, [breached] in approximately October 2017 with refusal (Trinkle) of the plaintiff to sick leave; and c) in the signing of the electronic individual development plan (eIDP) in approximately June 2016 for Marist Institute COBOL development course substituting subpar training, which the defendants did not sign the plaintiff up for either. Training is reserved for [C]aucasian individuals.

[Filing No. 104 at 30.]

Ms. Zheng sets forth the following claims:

- "Violation of *Bivens*/Fourth Amendment Due Process Rights" against Ms. Asher, Ms. Griffo, Mr. Trinkle,[7] Mr. Moran, Mr. Kopliku, and Ms. Hentzell;

- Conspiracy to interfere with civil rights under 42 U.S.C. §1985 against Ms. Asher, Ms. Griffo, Ms. Tookes, Mr. Trinkle, Ms. Hentzell, Mr. Kopliku, Ms. Moran, Mr. Gillison, Ms. McKay, Ms. Lawson, Ms. Hart, and "unknow[n] agents";

- "*Bivens* violation, Fifth and Fourteenth Amendment Due Process Rights" against Ms. Asher, Ms. Griffo, Mr. Tookes, Mr. Trinkle, Mr. Kopliku, Mr. Moran, Ms. Gillison, Mr. McKay, Ms. Lawson, and Ms. Hart;

- "Sexual Harassment, Racial Harassment, Sexual Discrimination, Racial Discrimination, Discrimination of Caste/Color, Age and Nation of Origin" under Title VII against all Defendants;

---

[7] Both Brian Trinkle and Alan Trinkle are named as Defendants, but Ms. Zheng refers generally to "Trinkle" throughout the Fourth Amended Complaint, including when enumerating her claims. In any event, whether she is referring to Brian or Alan Trinkle is not relevant to the resolution of her claims.

- Violation of Indiana Code §§ 35-45-2-1, 35-45-2-2, and 35-45-2-5 against Mr. Kopliku, Mr. Trinkle, Ms. Gillison, Ms. Lawson, Secretary Austin, Mr. Tookes, Ms. Arnold, Mr. Kostic, Mr. Pennington, and Ms. Crews;

- Violation of Indiana § 35-31.5-2-292 and 31 U.S.C. §§ 3729-3733 against Mr. Trinkle, Ms. Arnold, Ms. Tookes, and Mr. Kostic;

- Violation of Indiana Code 24-9-3-8 against Mr. Trinkle, Mr. Kopliku, and Ms. McKay;

- Violation of 5 U.S.C. § 1214(a)(3), 5 U.S.C. § 1221, and 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D) against Mr. Trinkle, Mr. Kopliku, Ms. Lawson, Mr. Gillison, Ms. McKay, Mr. Anderson, and Mr. Turner; and

- Breach of contract against Secretary Austin, Mr. Trinkle, Mr. Kopliku, Ms. Moran, and Ms. Tookes.

[Filing No. 104 at 33-39.]   Ms. Zheng seeks "[p]reliminary and permanent injunctions…from engaging in each of the unlawful practices, policies, customs, and usages set forth herein"; "[a]dvancement of grade levels for [her] who has lost positions as a result of the Defendants['] illegal conduct"; an order "restraining Defendants from any retaliation against [her] for participation in any form in this litigation or other appropriate injunctive reliefs"; damages including "back pay, front pay, general and special damages for lost compensation and job benefits she would have received but for Defendants' conduct, and for emotional distress, humiliation, embarrassment, and aguish"; "[f]ront/[f]orward pay…until expected retirement age for positions she would now have occupied but for Defendants' discriminatory, retaliatory and other illegal/ criminal practices"; and additional compensatory damages of $100 million.  [Filing No. 104 at 39-40.]

It appears from an EEOC decision attached to the Fourth Amended Complaint that the EEOC awarded Ms. Zheng $2,300 in compensatory damages and $595 in attorneys' fees on December 20, 2019, and then affirmed that decision on May 19, 2021.  [Filing No. 104-1.]

**C. Discussion**

        1.  *Secretary Austin's Motion to Dismiss [Filing No. 111]*

      Secretary Austin moves to dismiss the breach of contract claim that Ms. Zheng asserts against him. [Filing No. 111.]  In support of his motion, Secretary Austin argues that the Court lacks subject-matter jurisdiction over the breach of contract claim against him because under the Tucker Act, 28 U.S.C. § 1491, the United States Court of Federal Claims has exclusive jurisdiction over claims against the United States based on an express or implied contract where the amount of the claim exceeds $10,000.  [Filing No. 112 at 2.]  Secretary Austin notes that Ms. Zheng seeks $100 million, so the claim easily surpasses the $10,000 threshold, and that the contract claim "involves purported contracts with a federal agency."  [Filing No. 112 at 3.]  Secretary Austin also asserts that even if the Court has jurisdiction over the breach of contract claim, it "shares a common nucleus of facts with [Ms. Zheng's] discrimination claims" and is preempted by Title VII.  [Filing No. 112 at 4.]  Finally, he contends that if Ms. Zheng intends to bring her breach of contract claim based on a collective bargaining agreement, the claim would be preempted by the Labor Management Relations Act.  [Filing No. 112 at 4-5.]

      In her response,[8] Ms. Zheng appears to reiterate her breach of contract allegations and argues that discovery will further support her claim.  [Filing No. 129 at 1-2.]  She does not specifically address Secretary Austin's arguments.  [*See* Filing No. 129.]  Ms. Zheng also submits

---

[8] Ms. Zheng filed a "Reply/Motion in Opposition to Defendant's Motion to Dismiss" in which she stated that she "move[s] to oppose the dismissal of [breach] of contract" and that "[a] brief in support of this motion will follow the filing [of] this document."  [Filing No. 127.]  She then filed her response brief.  [Filing No. 129.]  Ms. Zheng is instructed that when responding to a motion filed by Defendants, she must only file her response brief, and not a separate "motion" opposing the original motion with her response brief filed separately.  The Court has previously cautioned Ms. Zheng not to do this, [*see* Filing No. 89 at 7], and **ORDERS** her to cease this practice as it is cluttering an already-cumbersome docket.

exhibits with her response, which include emails she sent and responses she received regarding her belief that the collective bargaining agreement had been breached related to her use of sick leave, and a blank Request for Representation form from the American Federation of Government Employees Local 1411.  [Filing No. 134.]

In his reply, Secretary Austin notes that Ms. Zheng did not address his arguments in her response brief.  [Filing No. 141.]

28 U.S.C. § 1491(a)(1) provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded…upon any express or implied contract with the United States.

The United States Court of Federal Claims has exclusive jurisdiction over claims based on an express or implied contract with the United States when the claim exceeds $10,000.  *See* 28 U.S.C. §1346(a)(2) (granting jurisdiction to district courts for claims based on an express or implied contract with the United States only when the claim does not exceed $10,000); *City of Joliet, Ill. v. New West, L.P.*, 921 F.3d 693, 695 (7th Cir. 2019) (noting that § 1491 "waives sovereign immunity for contract claims, provided that the litigation occurs in the Court of Federal Claims," but §1346 "permits contract suits seeking $10,000 or less to proceed in district courts").

Here, Ms. Zheng seeks $100 million in connection with her claims.  [*See* Filing No. 104 at 40.]  Because she asserts a breach of contract claim for more than $10,000 against Secretary Austin – an agent of the United States as the Secretary of the United States Department of Defense – this Court lacks jurisdiction over her breach of contract claim against Secretary Austin and she can only bring that claim in the United States Court of Federal Claims.  Accordingly, the Court

**GRANTS** Secretary Austin's Motion to Dismiss, [Filing No. 111], and **DISMISSES** Ms. Zheng's breach of contract claim against Secretary Austin **WITHOUT PREJUDICE**.[9]

> 2. *Motion to Dismiss Filed by Ms. Burrows and Ms. Lucas [Filing No. 113]*

In support of their Motion to Dismiss, Ms. Burrows and Ms. Lucas argue that Ms. Zheng "did not include a paragraph in her Fourth Amended Complaint identifying any claims against [Ms.] Burrows and [Ms.] Lucas or describing the basis for the claims," despite being ordered to do so by the Court. [Filing No. 114 at 2.] They assert that, in any event, nothing in Title VII gives this Court subject-matter jurisdiction over a claim against Ms. Burrows or Ms. Lucas based on the EEOC's handling of a charge, so any claim against them must be dismissed pursuant to Rule 12(b)(1). [Filing No. 114 at 2.] Ms. Burrows and Ms. Lucas note that none of the sections of Title VII granting jurisdiction to district courts "authorize[] individuals alleging discrimination by a third party to file suit against the EEOC or its officers as the enforcement agency." [Filing No. 114 at 3.] They also contend that Ms. Zheng cannot cast her claims against them as constitutional claims, that any claim for monetary damages would be barred by sovereign immunity, and that any claim in tort brought under the Federal Tort Claims Act ("FTCA") is not properly brought against the EEOC. [Filing No. 114 at 4-6.] Finally, Ms. Burrows and Ms. Lucas argue that any claim against them should be dismissed under Rule 12(b)(6) because Ms. Zheng does not have a cognizable claim against EEOC officers related to the handling or investigation of her complaint. [Filing No. 114 at 6-7.]

---

[9] Because the Court finds that it lacks subject-matter jurisdiction over Ms. Zheng's breach of contract claim against Secretary Austin, it must dismiss that claim without prejudice. *See American Bottom Conservancy v. U.S. Army Corps of Engineers*, 650 F.3d 652, 661 (7th Cir. 2011) (dismissal for lack of jurisdiction is without prejudice).

In her response, Ms. Zheng appears to argue that she can assert Title VII claims against Ms. Burrows and Ms. Lucas, that discovery is necessary and will support her claims, that her claims cannot be dismissed based on sovereign immunity, that FTCA claims are not filed until administrative remedies have been exhausted and she has not exhausted her "administrative claims," and that the EEOC has a responsibility to allow her to bring her claims.  [Filing No. 124.]

In their reply, Ms. Burrows and Ms. Lucas argue that Ms. Zheng does not address her failure to specifically identify any claims against them in her Fourth Amended Complaint, and also does not identify a federal law that would allow her to sue the EEOC.  [Filing No. 135 at 1-2.] They note that it is Ms. Zheng's burden to show that there was a waiver of sovereign immunity that would allow her to sue them, and she has not done so.  [Filing No. 135 at 2.]  Finally, Ms. Burrows and Ms. Lucas argue that Ms. Zheng is not entitled to discovery because she has not pled a claim against them over which the Court has subject-matter jurisdiction.  [Filing No. 135 at 2.]

The only time Ms. Zheng specifically mentions Ms. Burrows and Ms. Lucas in the Fourth Amended Complaint is when she states that she "charges…the EEOC/Department of Defense/Equal Employment Opportunity Commission's Office of Equal Opportunity Programs [with] misfeasance, it's resulting damages, and the part that defendants play in correcting those damages, as this is a claim upon which relief can be granted in respect to defendants…Lucas and Burrows in their official capacities for employer [EEOC]."  [Filing No. 104 at 14.]  Ms. Zheng does not mention Ms. Burrows or Ms. Lucas when she sets out her specific claims at the end of her  Fourth Amended Complaint, although she does assert her Title VII claim against "all Defendants."  [*See* Filing No. 104 at 33-39.]  Based on the Fourth Amended Complaint, the Court finds that Ms. Zheng has only asserted a Title VII claim against Ms. Burrows and Ms. Lucas, and

she appears to sue them only in their official capacities as she has not alleged any actions outside of the scope of their actions as EEOC employees.

Ms. Zheng complains regarding the EEOC's handling of her claims, through the actions of Ms. Burrows and Ms. Lucas.  But, as the Seventh Circuit Court of Appeals has explained:

> It is settled law, in this and other circuits, that Title VII does not provide either an express or implied cause of action against the EEOC to challenge its investigation and processing of a charge.  Congress has provided that a plaintiff's remedy in a case such as this is to commence suit in the district court against the party allegedly engaged in discrimination.  A plaintiff is there entitled to *de novo* review of [her] claims.

*McCottrell v. E.E.O.C.*, 726 F.2d 350, 351-52 (7th Cir. 1984) (internal citations and footnote omitted).  In other words, the proper procedure for a "plaintiff whose claim the EEOC mishandled is to bring a lawsuit against the plaintiff's employer on the merits, not one against the EEOC." *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000).  "And even if the [EEOC] botched the processing of her complaint, [the plaintiff] is now already in a federal court on the merits, and any earlier mishandling is essentially moot." *Id.*; *see also Frantz v. E.E.O.C.*, 1999 WL 232677, at *1 (7th Cir. April 19, 1999) ("Neither Title VII nor the Constitution…provides a remedy for an inadequate EEOC investigation.")  Accordingly, any claims Ms. Zheng has asserted based on the EEOC's alleged mishandling of her discrimination claims through the actions of Ms. Burrows or Ms. Lucas fail as a matter of law, and the Court **GRANTS** the Motion to Dismiss filed by Ms. Burrows and Ms. Lucas, [Filing No. 113], and **DISMISSES** Ms. Zheng's claims against them

**WITH PREJUDICE**.  The Clerk is **DIRECTED** to **TERMINATE** Ms. Burrows and Ms. Lucas as Defendants in this matter.[10]

>    3.   *The Individual Defendants' Motion to Dismiss [Filing No. 136]*

The Court discerns that Ms. Zheng sets forth the following claims against various subsets of the Individual Defendants: (a) constitutional/*Bivens* claims under the Fourth, Fifth, and Fourteenth Amendments; (b) a conspiracy to interfere with civil rights under 42 U.S.C. § 1985; (c) sexual harassment, racial harassment, sexual discrimination, racial discrimination, caste/color discrimination, age discrimination, and national origin discrimination under Title VII; (d) violations of various Indiana Code provisions; (e) violations of various provisions of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1214 and 2302; (f) violations of 31 U.S.C. §§ 3729-3733; and (g) breach of contract.  [*See* Filing No. 104.]  The Court addresses each claim in turn.

>    a.   Constitutional/*Bivens* Claims Under the Fourth, Fifth, and Fourteenth Amendments

In support of their Motion to Dismiss, the Individual Defendants argue that the Supreme Court and the Seventh Circuit Court of Appeals have declined to extend a cause of action under *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), to employment-related claims brought by federal employees.  [Filing No. 137 at 3-4.]  Instead, the Individual Defendants argue, Title VII is the exclusive remedy for federal employees to bring discrimination claims.  [Filing

---

[10] The Court notes that even if Ms. Zheng had alleged constitutional claims against Ms. Burrow and Ms. Lucas or tort claims under the FTCA, those claims would similarly fail as a matter of law. *See Frantz*, 1999 WL 232677, at *1 (no constitutional claim for inadequate EEOC investigation); *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (tort claims under the FTCA related to actions of government agency must be brought against the United States, and not against the agency). Moreover, Ms. Burrows and Ms. Lucas, as employees of a federal governmental agency sued in their official capacities, cannot be sued for monetary damages under the doctrine of sovereign immunity. *Meyer*, 510 U.S. at 475.

No. 137 at 4.]  The Individual Defendants also argue that the Supreme Court has rejected *Bivens* claims by federal employees that are employment-based but do not involve discrimination, such as those based on constitutional violations.  [Filing No. 137 at 4-5.]  They assert that the CSRA was enacted to address inappropriate federal personnel practices and that Ms. Zheng "has adequate statutory and administrative remedies" outside of a *Bivens* claim.  [Filing No. 137 at 5.]

In response, Ms. Zheng argues that egregious misconduct is actionable as a *Bivens* claim. [Filing No. 150 at 1.]  She asserts that "[d]iscovery documents will show [that she] report[ed] managerial self-declaration of being in a[n] environment where compliance to upholding laws, rights and regulations were regularly disregarded, denied and a despised method over threats, coercion and unreasonable demands for [her] to give up legal rights to report grievances, take advantage of protections afforded by law, and a force against liberty in career autonomy (pursuit of happiness)." [Filing No. 150 at 1.]  Ms. Zheng contends that "foundational issues in [this case] remain unresolved by discovery, motions/pleadings on relief/the discovery of further individuals and allegations regarding incidents said discovery, and on matters affecting national security/proof of plaintiff inducement into duress over threats and intimidation such [a] case may bring cause whereby some allegations may have been unintentionally suppressed or mislabeled."  [Filing No. 150 at 2.]

In their reply, the Individual Defendants argue that Ms. Zheng does not address the legal authority cited in their initial brief but rather relies upon her "awareness and understanding," and that whether she has a valid *Bivens* claim is a legal issue, not a factual one, so discovery would not save her *Bivens* claim.  [Filing No. 154 at 2.]

In *Bivens*, the Supreme Court first recognized an implied right of action for damages against federal officers alleged to have violated a plaintiff's Fourth Amendment right to be free

from unlawful search and seizure.  *See Bivens*, 403 U.S. at 392-98.  Since *Bivens*, the Supreme

Court has recognized an implied right of action under the Fifth Amendment's Due Process Clause,

*Davis v. Passman*, 442 U.S. 228 (1979), and the Eighth Amendment's prohibition against cruel

and unusual punishment, *Carlson v. Green*, 446 U.S. 14 (1980).  Following *Carlson*, the Supreme

Court has repeatedly refused to recognize *Bivens* actions in any new contexts.

In *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), the Supreme Court considered whether

"noncitizens who were suspected of having ties to terrorism and detained in harsh conditions in

the aftermath of September 11, could pursue *Bivens* remedies against various high-level federal

officials responsible for the policy that authorized their detention and the wardens responsible for

their treatment thereafter."  *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (citing *Abbasi*,

137 S. Ct. at 1853-54).  The Supreme Court declined to extend *Bivens* to these detention policy

claims, emphasizing that expanding the *Bivens* remedy is now a "disfavored" judicial activity.

*Abbasi*, 137 S. Ct. at 1857.

Post-*Abbasi*, additional scrutiny is required before a plaintiff may proceed with a *Bivens*

action if the claim arises "in a new *Bivens* context."  *Abbasi*, 137 S. Ct. at 1864.  "If the case is

different in a meaningful way from previous *Bivens* cases determined by [the Supreme] Court,

then the context is new."  *Id.* at 1859.  The Court articulated a two-part test for determining whether

*Bivens* remedies should be extended.  *Id.* at 1859-60.

First, courts must determine whether the plaintiff is seeking a *Bivens* remedy in a new

context.  If the answer to this question is "no," then no further analysis is required.  If the answer

if "yes," then the court must determine whether "special factors counsel[] hesitation."  *Abbasi*, 137

S. Ct. at 1860.  If the questioned claim is indeed a "new *Bivens* context" claim, then the district

court must ask whether there is "'any alternative, existing process for protecting the [injured

24

party's] interest.'" *Abbasi*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Abbasi*, 137 S. Ct. at 1865.

Ms. Zheng's *Bivens* claims, which she characterizes as Due Process claims under the Fourth, Fifth, and Fourteenth Amendments, are employment-based.  The Court finds that Ms. Zheng has other remedies available to her – remedies she is availing herself of by asserting Title VII and CSRA claims.  Accordingly, her *Bivens* claims fail as a matter of law.  *See Malekpour v. Chao*, 682 Fed. App'x 471, 475-76 (7th Cir. 2017) ("[F]or federal employees claiming discrimination on the basis of [a protected class under Title VII] (as well as reprisal for complaining about discrimination), Title VII is the exclusive judicial remedy."); *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) ("There is no question but that the CSRA provides the exclusive remedy for an alleged constitutional violation…arising out of federal employment."); *Klein v. Potter*, 43 F. App'x 960, 961 (7th Cir. 2002) ("[W]e have held that federal employees covered under the [CSRA] may not pursue a *Bivens* suit based on an adverse personnel decision."). The Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's *Bivens* claims against the Individual Defendants **WITH PREJUDICE**.  [Filing No. 136.]

### b.   Conspiracy to Interfere With Civil Rights Claim Under § 1985

The Individual Defendants argue in support of their Motion to Dismiss that Ms. Zheng's § 1985 conspiracy claim is preempted by Title VII and/or the CSRA because Title VII is the exclusive remedy for claims of discrimination, and the CSRA is the exclusive remedy for claims other than discrimination, in federal employment.  [Filing No. 137 at 6.]

25

Ms. Zheng does not specifically address her § 1985 conspiracy claim in her response brief, [*see* Filing No. 150], and the Individual Defendants note this failure in their reply, [Filing No. 154 at 1].

Because Ms. Zheng did not respond to the Individual Defendants' arguments regarding her § 1985 conspiracy claim, she has waived any opposition to those arguments. *Bonte*, 624 F.3d at 466; *McMasters*, 260 F.3d at 818. In any event, the Individual Defendants' arguments are well-taken. Ms. Zheng's § 1985 claim, to the extent it is based on alleged discrimination, is preempted by Title VII. *See, e.g.*, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (Title VII preempts a claim for employment discrimination under § 1985). Additionally, to the extent her § 1985 claim is employment-related but not one for discrimination, it is preempted by the CSRA. *See, e.g.*, *Hendrix v. Snow*, 170 Fed. App'x 68, 81 (11th Cir. 2006) (§ 1985 conspiracy claim "challenging [plaintiff's] employer's personnel decisions was preempted by the CSRA."). The Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's § 1985 conspiracy claim against the Individual Defendants **WITH PREJUDICE**. [Filing No. 136.]

  c. Title VII Claims

In support of its Motion to Dismiss, the Individual Defendants argue that the only appropriate defendant in a Title VII suit brought by a federal employee is the head of the department or agency where the plaintiff was employed. [Filing No. 137 at 1-2.] They also assert that Title VII "does not allow individual liability." [Filing No. 137 at 2.]

Ms. Zheng does not address her Title VII claims in her response brief, [*see* Filing No. 150], which the Individual Defendants note in their reply brief, [Filing No. 154 at 1].

Ms. Zheng did not respond to the Individual Defendants' arguments regarding her Title VII claims, so has waived any opposition. *Bonte*, 624 F.3d at 466. Additionally, a claim under Title VII may only be brought against an "employer" – a term that does not include supervisors or co-workers in their individual capacities. *See Passananti v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012) (citing *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995)). The Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's Title VII claims against the Individual Defendants **WITH PREJUDICE**. [Filing No. 136.]

d. Claims Under Various Indiana Code Provisions

In support of their Motion to Dismiss, the Individual Defendants argue that Ms. Zheng does not have a private right of action under any of the Indiana Code provisions upon which she relies. [Filing No. 137 at 7-8.] They also assert that one of the provisions Ms. Zheng relies upon, Indiana Code § 24-9-3-8, applies to practices in enforcing home loans and that any claim based on that provision should be dismissed because Ms. Zheng does not set forth any allegations related to home lending. [Filing No. 137 at 8.]

Ms. Zheng does not address her claims based on the Indiana Code provisions in her response brief, [*see* Filing No. 150], and the Individual Defendants note this in their reply, [Filing No. 154 at 1].

In addition to the fact that Ms. Zheng has waived any opposition to the Individual Defendants' arguments related to her claims based on Indiana Code provisions, *see Bonte*, 624 F.3d at 466, those claims also fail as a matter of law. First, four of the five provisions Ms. Zheng relies upon do not provide for a private right of action. Specifically, those four provisions – Ind. Code §35-45-2-1 (addressing the crime of "Intimidation"); Ind. Code § 35-45-2-2 (addressing the crime of "Harassment; 'obscene message'"); Ind. Code § 35-45-2-5 (addressing the crime of

"Interference with reporting of a crime"); and Ind. Code §35-31.5-2-292 (defining "Serious bodily injury") – are criminal statutes and do not provide Ms. Zheng with a civil claim for their violation.

Second, Ind. Code § 24-9-3-8 provides that a person seeking to enforce a home loan may not "knowingly or intentionally intimidate, coerce, or harass another person." Ms. Zheng does not set forth any allegations related to home loans in her Fourth Amended Complaint, so has not stated a claim under Ind. Code § 24-9-3-8.

The Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's claims under Ind. Code §§ 35-45-2-1, 35-45-2-2, 35-45-2-5, 35-31.5-2-292, and 24-9-3-8 against the Individual Defendants **WITH PREJUDICE**. [Filing No. 136.][11]

e. CSRA Claims

In support of their Motion to Dismiss, the Individual Defendants argue that Ms. Zheng's CSRA claims fail because she was required to first make a claim to the Merit Systems Protection Board ("MSPB") and then appeal any decision by filing an action in the United States Court of Appeals for the Federal Circuit or by bringing a Title VII claim or a claim under the Age Discrimination in Employment Act ("ADEA") or the Fair Labor Standards Act ("FLSA"). [Filing No. 137 at 6-7.] The Individual Defendants contend that "[n]othing in the CSRA authorizes a lawsuit before obtaining a final MSPB decision or authorizes a lawsuit against individual defendants." [Filing No. 137 at 7.]

---

[11] Ms. Zheng appears to assert claims against Secretary Austin for violations of Indiana Code §§ 35-45-2-1, 35-45-2-2, and 35-45-2-5. [Filing No. 104 at 35-36.] While Secretary Austin has not moved to dismiss those claims, they fail as a matter of law for the same reason that they fail against the Individual Defendants – Ms. Zheng has no private right of action under those provisions. The Court **DISMISSES** any claims Ms. Zheng asserts against Secretary Austin under Ind. Code §§ 35-45-2-1, 35-45-2-2, and 35-45-2-5 **WITH PREJUDICE**.

Ms. Zheng does not address her CSRA claims in her response brief, [*see* Filing No. 150], as the Individual Defendants note in their reply, [Filing No. 154 at 1].

Along with finding that Ms. Zheng's waiver of any opposition to the Individual Defendants' arguments warrants their dismissal, *see Bonte*, 624 F.3d at 466, the Court finds the Individual Defendants' arguments well-taken.  As the Seventh Circuit Court of Appeals has explained:

> The [CSRA] elaborated a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions…. Part and parcel of the CSRA's comprehensive scheme is the stated congressional intention that one agency, and one court, have the primary responsibility for interpreting the CSRA's provisions…. Congress recognized the primacy of both the [MSPB] and the Federal Circuit in interpretive matters under the CSRA.  Delegating the task of interpreting the CSRA solely to these two bodies fosters the development of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an unnecessary layer of judicial review in lower federal courts, and encourages more consistent judicial decisions.  Thus, the statute envisions a uniform system of appeals.  An employee who wishes to complain of an adverse personnel decision must first appeal to the MSPB.  Complaints about the manner in which the MSPB handles matters, by the same token, must be taken to the Federal Circuit as part of an established course of judicial review.

*Ayrault v. Pena*, 60 F.3d 346, 347-48 (7th Cir. 1995) (quotations and citations omitted).

Because Ms. Zheng does not allege that she brought her CSRA claims to the MSPB before initiating this lawsuit, and since she was required to appeal any decision of the MSPB to the United States Court of Appeals for the Federal Circuit, this Court does not have subject-matter jurisdiction over Ms. Zheng's CSRA claims.  The Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's CSRA claims against the Individual Defendants **WITHOUT PREJUDICE**.  [Filing No. 136.]

> f.   Claims Under 31 U.S.C. §§ 3729-3733

The Individual Defendants argue in support of their Motion to Dismiss that Ms. Zheng's claims under 31 U.S.C. §§ 3729-3733 may only be brought by private actors on behalf of the federal government in a *qui tam* action, and not by an individual on their own behalf.  [Filing No.

137 at 8-9.] They also note that Ms. Zheng does not allege in the Fourth Amended Complaint that anyone made a false claim for payment. [Filing No. 137 at 9.]

Ms. Zheng does not address her claims under 31 U.S.C. §§ 3729-3733 in her response brief, [*see* Filing No. 150], as the Individual Defendants recognize in their reply brief, [Filing No. 154 at 1].

The provisions under with Ms. Zheng brings her claims – 31 U.S.C. §§ 3729 to 3733 – are part of the False Claims Act. Section 3730(b) of the Act provides that private individuals may bring an action on behalf of themselves and the United States Government "in the name of the Government." *See also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1507 (2019) ("The False Claims Act permits a private person, known as a relator, to bring a *qui tam* civil action in the name of the [Federal] Government, against any person who knowingly presents…a false or fraudulent claim for payment to the Government or to certain third parties acting on the Government's behalf.") (quotations and citations omitted). Ms. Zheng's False Claims Act claims fail because she does not bring them on behalf of the Government as part of a *qui tam* action. Moreover, she does not allege in the Fourth Amended Complaint that any of the Individual Defendants submitted a false claim to the Government. The Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's claims under 31 U.S.C. §§ 3729 to 3733 against the Individual Defendants **WITH PREJUDICE**. [Filing No. 136.]

g.   Breach of Contract Claim

The Individual Defendants argue in support of their Motion to Dismiss that Ms. Zheng "failed to allege the existence of a contract between herself and any of the Individual Defendants." [Filing No. 137 at 9.]

Ms. Zheng did not address her breach of contract claim in her response brief, [*see* Filing No. 150], as the Individual Defendants note in their reply brief, [Filing No. 154 at 1].

Ms. Zheng's breach of contract claim is based on her allegations that Mr. Trinkle refused to grant her sick leave and that Mr. Kopliku, Mr. Trinkle, Ms. Moran, and Ms. Tookes refused to train her "as agreed in eIDP." [Filing No. 104 at 39.]  Under Indiana law, the three elements of a breach of contract claim are: (1) the existence of a contract; (2) the defendant's breach thereof; and (3) damages suffered as a result. *Trustees of Indiana Univ. of Spiegel*, 186 N.E.3d 1151, 1158 (Ind. Ct. App. 2022).  Ms. Zheng does not allege that any contract existed between herself and Mr. Trinkle, Mr. Kopliku, Ms. Moran, or Ms. Tookes.  [*See* Filing No. 104.]  The closest she comes is alleging that they refused to train her "as agreed in eIDP," which she alleges was an "electronic individual development plan" she signed in June 2016 and that referred to certain training for which certain Individual Defendants did not sign her up.  [Filing No. 104 at 30; Filing No. 104 at 39.]  According to Ms. Zheng's allegations, the eIDP was Ms. Zheng's own development plan, not a contract that she and the Individual Defendants signed.

Because Ms. Zheng's allegations do not support the existence of a contract between her and any of the Individual Defendants which was somehow breached, the Court **GRANTS** the Individual Defendants' Motion to Dismiss to the extent it **DISMISSES** Ms. Zheng's breach of contract claim against the Individual Defendants **WITH PREJUDICE**.  [Filing No. 136.]

In sum, the Court **GRANTS** the Individual Defendants' Motion to Dismiss all of Ms. Zheng's claims against them, [Filing No. 136], and **DIRECTS** the Clerk to **TERMINATE** all of the Individual Defendants as parties in this case.

**V.**

**CONCLUSION**

For the foregoing reasons, the Court:

- **DIRECTS** the Clerk to **TERMINATE** the "Defense Finance and Accounting Service Office of Equal Employment Opportunity Programs" as a party in this case;

- **INSTRUCTS** Ms. Zheng not to file any further "Notices" in this case unless specifically ordered to do so by the Court.  Failure to follow this instruction will result in further notices filed by Ms. Zheng being stricken from the docket;

- **GRANTS** Ms. Zheng's "Motion Withdraw Pleading/Document (Dkt. 144)," [147], and **DIRECTS** the Clerk to show Filing No. 144 as withdrawn;

- **DENIES** Ms. Zheng's Motion for Entry of Default, [115]; Motion for Default Judgment, [119]; Request for Certificate of Default, [120]; Motion for Default Judgment on Sum Certain, [121]; and Motion for Default Judgment on Sum Certain, [132].  The Court advises Ms. Zheng that it will not consider any further motions seeking either Clerk's entry of default or default judgment against any of the Defendants related to the operative Fourth Amended Complaint.  Should Ms. Zheng file any such motions, they will be summarily denied and she may face monetary sanctions;

- **DENIES** Ms. Zheng's Motion for Injunctive Relief, [126];

- **GRANTS** Secretary Austin's Motion to Dismiss Breach of Contract Claim, [111];

- **GRANTS** the Motion to Dismiss Fourth Amended Complaint filed by Ms. Burrows and Ms. Lucas, [113], and **DIRECTS** the Clerk to **TERMINATE** Defendants Charlotte Burrows and Andrea Lucas as parties in this case; and

- **GRANTS** the Individual Defendants' Motion to Dismiss, [136], and **DIRECTS** the Clerk to **TERMINATE** Eros Kopliku, Brian Keith Trinkle, Terri Griffo, Constance Asher, Vivian Tookes, William Kostic, Robert C. Arnold, Jr., Joanne Moran, Aaron Gillison, Carol Lawson, Teresa McKay, Sarah Hentzell, Megan Hart, Anita Martin, Nancy Keaton, Heather Crews, Theodore Pennington, Alan Trinkle, Katie Vigil, Richard Glick, Tracey Meyer (Columbus), Victor Blake, John Cochran, Gary Turner, Teresa Blue, Roger Anderson, Ronald Murlin, Kenyon Porter, and Tracey Meyer as parties in this case.

No partial final judgment shall issue.

Ms. Zheng's Title VII claim against Secretary Austin is the sole claim that will proceed. The Court requests that the Magistrate Judge confer with the parties regarding the possibility of a prompt resolution of that claim.  The deadlines  established by the Court's Scheduling Order, [Filing No. 128], remain in effect.

Date: 1/12/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

 Distribution via ECF to counsel of record.

**Distribution via United States Mail to:**

Folayan Dara Zheng
1950 E. Greyhound Pass
Ste. 18 PMB 197
Carmel, IN 46033

Magistrate Judge Kendra Klump